Tilghman, C. J.,
(after stating the case, delivered his opinion, as follows:) It is granted, that Phoebe Emlen had a title under William Smith, to whom a patent for five hundred acres .of land, including this rock, issued on the 31st of December, 1684. Also, that this rock was severed from the fast land, in consequence of the erection of the Fairmount dam, by the Schuylkill Navigation Company. This company was incorporated, by an act passed the 8th of March, 1815, (6 St. L. 257,) and had authority to improve the channel of the river, or to open, or *12 change it, or make a new channel; also to cut, break, and remove all trees, rocíes, stones, earth, gravel, or other material, or to make use of such timber, rocks, stones, &c. &c., in the construction of their works, and to form, or set up any dams, locks, or other devices necessary or proper for accomplishing their object, viz, the the rendering of the river navigable. If any person was injured by the erection of these works, the act prescribes the mode of assessing the damages, in case the person injured and the company could not agree on the compensation; and provides, that those who assessed the damages, were to have regard to the advantages which the person complaining, might derive from the improved navigation of the river. This company might enter into, and occupy, any land necessary for the erection of locks, sluices, or dams, making compensation to the owners, as they might agree, or paying the damages assessed as aforesaid, in case of non-agreement. But there is nothing in this act, which authorizes the company, to occupy any land, except what was necessary for their works. The rock in question was not necessary for their works, being below the last dam in the river, and in tide water; neither has the company any claim to it, or any desire to occupy it. The dispute is between Shaw, (the lessee of Phoebe Emlen,) and those persons, who, considering the rock as public property, assert their right to enter on it, as common to all the citizens of the state. But there is this great difference between this rock and others, that the late proprietaries of Pennsylvania, under whom the commonwealth claims, had granted it, for value received, but had not granted the others. Phoebe Emlen once Had title to it, beyond doubt, and I cannot perceive in what manner her title was divested. Suppose, that instead of a rock, the river had cut off a valuable point of land, and made an island of it, can any one doubt that her title would have remained good ? And where is the difference between an island and a rock. One may be as valuable as the other, and the present dispute proves that this rock is valuable as a fishery. That the title to the rock remained in Phoebe Emleii, is so plain, that it is almost superfluous to cite an authority on the point. Yet I will mention one, in Coop. Justinian, 75, (Book 2, Tit. 1, sec. 22,) “ If a river divides itself, and afterwards unites again, having reduced a tract of land into the form of an island, the land itself continues to be the property of the former owner.” When the channel of a river is enlarged, from whatever cause, it becomes subject to the rights of the public. And one of those rights is, a common right of fishery. All citizens, therefore, had a right to make use of the enlarged channel, caused by the Fairmount dam, provided no injury was done to private property. They might go in their boats and fish, whenever the water flowed, but had no right to stand on an island which had been granted. They might pass over this rock whenever the water overflowed it, but had no right to stand on it, for the purpose of fishing. It is *13 unnecessary to consider how the law would be, if it were impossible to distinguish this from other rocks never granted, and therefore remaining public property ; because Shaw gave notice that it was his, took his stand on it, and warned the fishermen off. I cannot think it was incumbent on Phoebe Emlen, or those claiming under her, to enter and take possession, after the rock was severed from the fast land, because the possession was never out of her. In this, it appears to me, that the judge’s charge went too far in favour of the commonwealth; and as it led, no doubt, to the conviction of the defendants, I am of opinion that a new trial should be granted.
Gibson, J.
The difficulty here is not so much in the law as in its application to the facts. The ownership of land bounded by a navigable river undoubtedly extends to low water mark; and although the gain or loss which arises from alluvion or detrition is permanent, yet where a part is added or taken away by an avulsion, no property is permanently gained in the part added, or lost in the part taken away. Thus the surface, laid bare by a sudden recession of the water, nevertheless remains potentially a part of the channel, and the public may regain its rights over it by again causing the water to flow on it; ahd, on the other hand, where a part of the bank is deluged, the owner may regain it by artificial means; but, until he do regain it, the part so deluged will be subject to the rights which the public may exercise in any other part of the river. While it remains overflowed, it has the character and incidents peculiar to the bed of a navigable river; and the right to reclaim, is the only one which the owner may exercise in regard to it. On this last principle, (to establish which requires no better authority than the treatise of Lord Hale, in Hargrave’s Law Tracts,) I found my opinion, without regard to the rights which the Schuylkill Navigation Company may be supposed to have acquired in the place in question. Now let us advert to the facts. Before the erection of the dam, the rock in question was partly buried in the mud, which was left bare at low water, and it was consequently included in Miss Emlen’s boundary; but in consequence of the water, which has ever since been turned on this part of her land, it is now distinctly in the bed of the river, and at a considerable distance from the shore. Its surface is less than twenty feet in diameter; a part of which is a few inches above the surface at low tide, and continues bare between two and three hours in the twenty-four, but at high tide is six feet under water: and the question is, whether it ought to be considered a part of the bed of the river or of Miss Emlen’s farm. I admit that where a part of the hank of a river is turned into an island, either suddenly or slowly, the title of the owner to it is not extinguished; and if there were any thing here to give this rock the character of an island, — if there were any thing in its present appearance that it had once been part *14 of the bank, — or, in short, any thing to distinguish it from the rocks and stones which form the original bed of the river, I should hold that Miss Emlen had a right to occupy it exclusively. I say occupy; for I do not deny that she has a latent, right of property in it. She might lawfully cleave it for the garnets which it contains, or use the fragments for building, or any other purpose; but she might do the same in respect to those rocks which are covered at low water, and which therefore are indisputably a part of the channel. The right of occupancy, therefore, and not. property in the thing, is the criterion; and if the place be a part of the channel, she can exercise no other right over it than over any other part of the river. But it is impossible to treat this rock as an island. The commonwealth would not grant it as such, in its present condition; and although the. property in a thing which was granted, while it was the legitimate subject of a grant, will not be' divested by a change of its condition, it may undoubtedly be suspended; and the policy of the state, in uniformly refusing to permit naked rocks or sand bars to become the subjects of an office right, ought to have a direct and powerful influence in an inquiry as to what shall be considered as properly the subject of private occupancy, and what subservient to the public rights of navigation and fishery. I perceive no reason to uphold the claim of Miss Emlen to the occupancy of this rock, which would not equally uphold her claim to an occupancy of every other rock or stone within the limit of her ancient boundary, which presents an inch of its surface above low water mark. But the maxim tie minimis is appropriate to either. The foundation of the public right of occupancy, whilst the riparian owner permits his land to be inundated,'is the impossibility which exists, of distinguishing it from the original channel, and the danger which those who use the river would consequently incur of becoming answerable for an involuntary trespass. Nor is actual notice of the ancient boundary sufficient to displace the occupancy of the public, who would be exposed to imposition, if they were bound to obey, on being warned by the owner. The public are entitled to better assurance than the mere word of the owner, as to the locality of the former land marks; and the only effectual way of asserting his claim, therefore, is to restore it to its former condition. It is certain that personal notice is insufficient, in respect of a part which is covered at low water, and it must be equally so in respect of a rock, which is conceded to be subject to the rights of the public while covered with water, and to be treated as a part of the bed of the river. I therefore view the fact, that the prosecutors were previously warned by the defendants to quit the rock, as altogether immaterial. Every citizen has a right to land on a barren rock in the bed of a navigable river, and use it as part of the public highway; and, if this be such, the defendants were undoubtedly culpable. But the admission that the public have a right of way over this rock during the time, it is covered with *15 water is decisive of the question; for it is impossible to treat it as a part of Miss Emlen’s farm and the subject of private occupancy for three hours, and a part of the public highway during all the rest of the twenty-four, or to insist that the respective rights of the owner, and of the public, shall alternate with the ebb and flow of the tide. The common law'maxim, cujus est solum, is adverse to such a state of things; and if Miss Emlen’s latent right of property be sufficient to draw to it the right of possession when this rock is bare, it must necessarily have the same effect when it is covered with water; which is not pretended. For these reasons I am of opinion that the rule to show cause should be discharged.
Duncan, J., concurred with the Chief Justice, and gave his reasons verbally.
New trial granted.